384-07/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHIQUITA INTERNATIONAL LIMITED and            07 CV 6786 (PKL)
GREAT WHITE FLEET LIMITED,
                            Plaintiffs,

    -against-

M/V BOSSE, her engines, boilers, tackle, furniture,
apparel, etc., *in rem,* BOSSE SHIPPING LTD., and
HOLY HOUSE SHIPPING AB *in personam,*

                            Defendants.
------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO VACATE ATTACHMENT


                            Freehill Hogan & Mahar, LLP
                            Attorneys for Defendants Holy House
                            Shipping AB and Bosse Shipping Ltd.
                            80 Pine Street
                            New York, NY  10005
                            (212) 425-1900 / (212) 425-1901 fax


Of Counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

# TABLE OF CONTENTS

| | |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| FACTS | 1 |
| ARGUMENT | |
| POINT I | |
| The Restrained Funds That Do Not Belong to Defendants Bosse and Holy House Must Be Released | 4 |
| POINT II | |
| The Attachment of the Funds Restrained on August 7 and 17, 12007, Should Be Vacated For Failure to Provide Notice as Required and Plaintiffs Should be Barred from Re-Attaching the Same Funds | 7 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Cases**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006) ........... 5

Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d 113 (E.D.N.Y. 1998) .......... 5

Blake Maritime Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310 (S.D.N.Y. October 31, 2005) ................ 10

Chestnut Shipping Co. v. T-3 Freight, Ltd., 1995 U.S. Dist. LEXIS 2053 (S.D.N.Y. Feb. 22, 1995) ................ 10

DS Bulk Pte. Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 3942 (S.D.N.Y. June 13, 2006) ................ 6, 7

Deiulemar Compagnia di Navigazione S.p.A. v. Dabkomar Bulk Carriers Ltd., 2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. Dec. 12, 2005) ................ 7

Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341 (M.D.FL. 2001) ................ 5

Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006) ................ 7

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) ................ 9

Rolls Royce Industrial Power (India) v. M/V FRATZIS M, 1996 A.M.C. 393 (S.D.N.Y. July 24, 1995) ................ 10

Polar Shipping, Ltd. v. Oriental Shipping Corp., 680 F.2d 627 (9th Cir. 1982) ................ 9

Salazar v. The Atlantic Sun, 881 F.2d 73 (3d Cir. 1989) ................ 5

Seaplus Line Co. v. Bulkhandling Handymax, 409 F.Supp.2d 316 (S.D.N.Y. 2005) ....... 11

Status International S.A. v. M.N.D. Maritime Ltd., 1998 U.S. Dist. LEXIS 2825 (S.D.N.Y. Mar. 11, 1998) ................ 11

The M.M. CHASE, 37 F. 708 (S.D.N.Y. 1889) ................ 9

T&O Shipping Ltd. v. Source Link Co., Ltd., 2006 WL 351368 (S.D.N.Y. Dec. 5, 2006) .................................................................................................................... 4,5

T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310 (S.D.N.Y. 2006) ............................................................................................................................. 4

Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318 (S.D.N.Y. 2006) ......................................................................................................................... 5, 7

Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002) ........................ 6

**Other Authorities**

Black's Law Dictionary (6th ed.) ............................................................................ 9

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted in support of the instant motion brought under Supplemental Admiralty Rule E(4)(f) by Defendants Holy House Shipping AB ("Holy House") and Bosse Shipping Ltd. ("Bosse"), and on behalf of a number of shipowners whose vessels are managed by Holy House, to vacate the attachment of certain electronic funds transfers (EFTs) which have been restrained pursuant to Rule B. The grounds for vacature are twofold: 1) except for a small portion of one transfer, neither Holy House nor Bosse has an attachable interest in the funds which have been restrained; and 2) Plaintiffs Chiquita International Limited ("Chiquita") and Great White Fleet Limited ("GWF") have failed to provide "prompt" notice of the restraint of the first two EFTs restrained on August 7 and 17, 2007 respectively as required by Local Rule B.2.

The background facts are not in dispute, and are set forth below.

## FACTS

Bosse is the owner of the M/V BOSSE. Holy House contracts to provide technical and commercial management of a fleet of 15 refrigerated cargo ships on behalf of the vessels' respective owners, including Bosse. Bosse Shipping has no interest in any other vessel managed by Holy House. On or about April 1, 2005, Bosse chartered the M/V BOSSE to GWF for one time charter trip from East Coast Central America to North Continent and/or Baltic or Mediterranean including the Black Sea in GWF's option. The charter was arranged by Holy House in its capacity as manager on behalf of Bosse and provided for charter hire due to Bosse to be initially paid to the account of Holy House. Such payment arrangements are not unusual where the vessel's owner has contracted

NYDOCS1/289534.1                                                1

with a manager to undertake the commercial operation of the vessel on its behalf. (Blidberg Declaration ¶ 3-6).

In or about mid-April 2005 the vessel loaded a cargo of bananas at Limon, Costa Rica and was directed to Tartous, Syria. On arrival at Tartous on May 2, 2005, the vessel was arrested by the Syrian government due to an unpaid customs fine which had been imposed against the vessel *in rem* as a result of a prior call of the vessel to Syria in April 2001 when the vessel was then named M/V KUDU and under the ownership of a Panamanian company named Navegantes Del Oriente S.A. Bosse paid the fine on May 4, 2005, however, the vessel was not released from arrest until May 9, 2005.

Chiquita, the shipper of the bananas, alleges it sustained losses in the amount of $750,295.36 resulting from the delay at Tartous. In particular, Chiquita has asserted that it intended discharging certain of the bananas at a second port, Bar, Montenegro; that the bananas bound for Bar would have been overripe at destination; and that it was thus necessary to sell the Bar bananas at a substantial discount in Tartous. Chiquita further claims that in order to fulfill its obligations under its sales contracts at Bar it was further forced to deviate another vessel, the M/V KEA, from Italy to Bar. GWF alleges that the vessel was off-hire during the period of the arrest at Syria and that it was thus entitled to a credit for bunkers (ie. fuel) used during the detention and overpaid hire in the amount of $50,314.

Chiquita and GWF commenced this action to recover for their respective claims.[1] The complaint also seeks to obtain security on behalf of the Plaintiffs under Rule B

---

[1] The charter party provides that all disputes arising thereunder are to be resolved in London arbitration with English law to apply. Accordingly, GWF's claims must be

NYDOCS1/289534.1                           2

against both Bosse and Holy House in the amount of $800,610.03. Plaintiffs' application for a Rule B attachment was granted *ex parte* on July 27, 2007 and Plaintiffs commenced service of the Process of Maritime Attachment and Garnishment ("PMAG") on various garnishee banks shortly thereafter.

As set forth in detail in the accompanying Declaration of Einar Blidberg, the Financial Controller of Holy House, to date five electronic funds transfers (EFTs) have been restrained at JPMorgan Chase Bank and Deustche Bank Trust Company Americas pursuant to the PMAG. Other than a small portion of one EFT which was restrained at JPMorgan Chase Bank on August 7, 2007,[2] neither Bosse nor Holy House has any attachable interest in the restrained EFTs. As attested to by Mr. Blidberg, each of the transfers represents payments being made to or from Holy House on behalf of other shipowners whose vessels are managed by Holy House. (Blidberg Declaration ¶ 10-20.)

Chiquita and GWF have not provided notice to Holy House or Bosse of the restraint of the Bosse funds on August 7. Nor have Chiquita and/or GWF provided notice to the Defendants of the restraint of the funds being remitted to Holy House by Lavinia Shipping on August 17, 2007 as required by Local Admiralty Rule B.2.[3] (Blindberg Declaration ¶ 22.)

---

stayed in favor of arbitration as agreed with Bosse. The complaint makes no mention of arbitration.

[2] The sum of $4,348.00 of the total payment in the amount of $9,989.00 restrained on August 7, 2007 at JPMorgan Chase Bank was being paid by Holy House to Golden Horn Shipping Transportation and Trading Ltd., which acts as the local agent for vessels managed by Holy House calling at Turkey or passing the Turkish Straits in respect to sums due the agent in connection with the M/V BOSSE. (Blidberg Declaration ¶ 11-12.)

[3] Counsel for Plaintiffs has provided notice of the restraint of the remaining three EFTs to counsel for Holy House and Bosse.

For the reasons set forth below, the attachment of all of the restrained funds should be vacated.

## ARGUMENT

### Point I

### THE RESTRAINED FUNDS THAT DO NOT BELONG TO DEFENDANTS BOSSE AND HOLY HOUSE MUST BE RELEASED

There can be no serious debate that if restrained property does not belong to Defendants Bosse and Holy House it must be released. An order of maritime attachment and garnishment under Rule B is issued upon a minimal *prima facie* showing, which is typically made *ex parte* as occurred in this case. Plaintiffs seeking a writ of maritime attachment "must comply with Rule B, which states in relevant part:

> If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the *defendant's* tangible personal property – up to the amount sued for – n the hands of garnishees named in the process . . . The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment.

T&O Shipping Ltd. v. Source Link Co., Ltd., 2006 WL 351368, *2 (S.D.N.Y. Dec. 5, 2006) (quoting Fed. R. Civ. P. Supp. R. B(1)(a)-(b) (emphasis added). Once property has been restrained, though, "any person claiming an interest" in the attached *res* may request a hearing in order to seek to have the attachment vacated or request other relief. T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310, 313 (S.D.N.Y. 2006) citing Fed. R. Civ. P. E(4)(f). Holy House has been expressly authorized to make this

application on behalf of the innocent shipowners whose property has been improperly restrained in this action. (Blidberg Declaration ¶ 1.)

Interpretations of Rule E(4)(f) are unanimous in holding that the burden of sustaining the attachment rests squarely with the plaintiff. *See, e.g.*, Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d 113, 125 (E.D.N.Y. 1998); Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318 (S.D.N.Y. 2006).

Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends upon the issues in controversy. Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3d Cir. 1989); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341, 1357-59 (M.D.FL. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff…to show why the attachment should not be vacated").

At a hearing pursuant to E(4)(f), in order to sustain the attachment, a plaintiff "must show that it has fulfilled the 'filing and service requirements of Rule B and E' and that: '(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the *defendant's property* may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.'" T&O Shipping, 2006 WL 3513638 at *2 (quoting Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006) (emphasis added)). If a plaintiff fails to prove that it has met Rule B and E's requirements, "the district court must vacate the attachment." Id. Rule B only permits attachment of a named defendant's assets. T&O

Shipping, at *4 ("Rule B limits the scope of an attachment to a *defendant who is named in a verified complaint*") (emphasis added); see also, Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 269 (2d Cir. 2002) ("In attachment and garnishment proceedings the persons whose interests will be affected by the judgment are identified by the complaint"); DS Bulk Pte. Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 3942 (S.D.N.Y. June 13, 2006) ("The language of the Supplemental Rule B clearly anticipates that only a 'defendant' will be subject to an order of attachment.")

As attested to by Einar Blidberg, the Financial Controller of Holy House, Plaintiffs Chiquita and GWF have restrained $624,822.95 in funds belonging to a number of shipowners whose vessels are managed by Holy House, all of which are non-parties. With the exception of $4,348 out of the $9,989 being remitted by Holy House to Golden Horn Shipping on behalf of Bosse, none of the other funds sent under the five wire transfers which have been restrained in this action belong to either Holy House or Bosse, are due or owing by Holy House or Bosse, or represent funds in which Holy House or Bosse Shipping have any interest. Holy House is paid a management fee by the respective owners of the vessels it manages pursuant to the terms of a contract with each individual owner. Holy House does not receive any percentage of any payment made to or from any of the owners of the vessels it manages. Holy House sends and receives funds on behalf of the owners of the vessels for whom Holy House acts as commercial manager in accordance with the specific request of the owners. In doing so, Holy House acts as agent only and does not have any personal interest in the transaction. None of the other shipowners for whom Holy House acts as manager have any contractual agreements

with Bosse Shipping and none owe any debt to or are owed a debt by Bosse Shipping. (Blidberg Declaration ¶ 17-20.)

Accordingly, as Plaintiffs' attachment of the innocent shipowners' funds is unsupportable by law, it is respectfully submitted that the attachment of said funds must be vacated.

### Point II

### THE ATTACHMENTS OF THE FUNDS RESTRAINED ON AUGUST 7 AND 17, 2007, SHOULD BE VACATED FOR FAILURE TO PROVIDE NOTICE AS REQUIRED AND PLAINTIFFS SHOULD BE BARRED FROM RE-ATTACHING THE SAME FUNDS

It is well-established that in order to sustain the attachment the plaintiff must demonstrate all technical requirements of the Rule have been met. *Advisory Committee Notes to Rule E* (1985 Amendment) ("Rule E(4)(f) is designed to...[guarantee] a prompt post-seizure hearing at which [the defendant] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings"). *See also* DS Bulk PTE, Ltd., 2006 U.S. Dist. LEXIS 39242 (vacating attachment that failed to meet all technical requirements); Deiulemar Compagnia di Navigazione S.p.A. v. Dabkomar Bulk Carriers Ltd., 2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. Dec. 12, 2005) (same); Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006) ("[t]he plaintiff must demonstrate that...all technical requirements for effective attachment have been met"), *citing* Ulisses, 415 F.Supp.2d at 322-23. Here, Plaintiffs are unable to show that all technical requirements have been met – in particular, their obligation to provide prompt

notice of the restraint of Defendants' property to the Defendants – and accordingly, the attachment should be vacated.[4]

When a maritime plaintiff restrains property of the defendant through the *ex parte* Rule B procedure, due process concerns require that the plaintiff must give the defendant prompt notice of the restraint so the defendant can take advantage of its right to a post-attachment hearing. This rule is codified at Local Admiralty Rule B.2, which provides:

> **In an action where any property of a defendant is attached, the plaintiff shall give prompt notice to the defendant of the attachment. Such notice shall be in writing, and may be given by telex, telegram, cable, fax, or other verifiable electronic means.**

(emphasis supplied)

Here, Plaintiffs Chiquita and GWF failed to comply with the requirement of Local Admiralty Rule B.2 to give "prompt notice" of the restraint. Plaintiffs' failure in this regard was two-fold. First, the accompanying Blidberg Declaration, at paragraph 22, testifies that neither Holy House nor Bosse received notice from Plaintiffs Chiquita and GWF of the restraints of the wire transfers of August 7 and 17. Second, to the extent that plaintiffs did attempt to give notice by advising Defendants' counsel of the restraints during a telephone conversation held on August 22, the notice was anything but "prompt". Accordingly the attachments must be vacated.

---

[4] Defendants make this argument in the alternative with respect to the EFTs restrained on August 7 and 17 to the extent they represent property in which Defendants jointly or severally have an attachable interest, which is denied except in respect to the $4,348 which was being transferred by Holy House on behalf of Bosse which EFT was restrained on August 7.

The Supreme Court has established what it means to "give notice". "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). As attested to by Mr. Blidberg, Plaintiffs' failed to provide any notice of the first two restraints on August 7 and 17 to Holy House or Bosse. Such failure alone is reason to vacate the attachment of these EFTs.

To the extent Plaintiffs attempted to give notice of the two restraints via telephone advice to Defendants' counsel on August 22, the notice was not "prompt". While the Rule does not provide a definition for "prompt", the term is well understood to mean "to act immediately, responding to the instant". Black's Law Dictionary (6th ed.). It was also settled long ago in the case of The M.M. CHASE, 37 F. 708 (S.D.N.Y. 1889) that a master who had waited until the third day following an arrest to give notice to the appropriate parties *had not been timely* according to the prompt notice requirement. The M.M. CHASE Court held that "[w]here communication may be had daily or hourly, the duty of speedy notice is the more imperative, and the ship has the corresponding advantage of being able to terminate her obligations to the cargo-owner the more quickly." The Ninth Circuit in Polar Shipping looked to a similar local rule for the definition of a like term, "instanter", which was usually understood to mean within 24 hours. Polar Shipping, Ltd. v. Oriental Shipping Corp., 680 F.2d 627 (9th Cir. 1982).

Plaintiffs did not even attempt to give notice of the of the August 7 and 17 attachments until August 22, 2007, and then only by telephone to undersigned counsel.

No information was provided as to the exact amounts of the EFTs, which banks were involved, and the originator and beneficiary of each transfer so that Defendants could investigate and take such steps as necessary to avoid the potential breach of a contract due to non-payment. (Unger Affirmation ¶ 3-4.) What little notice as was given many days after the restraints certainly was not "prompt" (as required by Local Admiralty Rule B.2) under any understanding of the term.

Local Admiralty Rule B.2 does not provide for any specific penalty for failing to provide prompt notice of a restraint. Certainly, though, for the Rule to have any effect, there must be some penalty for failing to comply. Former Local Admiralty Rule 12, on which the current Rule E(4)(f) is based,[5] provided that a district court had the inherent authority to vacate an attachment upon a showing of "any improper practice". *See* Blake Maritime Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310, *8 at n.3 (S.D.N.Y. October 31, 2005); *see also* Chestnut Shipping Co. v. T-3 Freight, Ltd., 1995 U.S. Dist. LEXIS 2053 (S.D.N.Y. Feb. 22, 1995).

Judge Haight, in Rolls Royce Industrial Power (India) v. M/V FRATZIS M, 1996 A.M.C. 393 (S.D.N.Y. July 24, 1995) looked to the origin of the Local Admiralty Rule B.2 prompt notice requirement and found that the wording was identical to former Local Admiralty Rule 10, which provided:

> In an action where any property of a defendant is attached, the plaintiff shall give prompt notice to the defendant of the attachment. Such notice shall be in writing and may be given by telex, telegram or cable. *__Failure to give such notice may be regarded as an improper practice within the meaning of Rule 12__*.

(emphasis supplied)

---

[5] *See* Rule E *Advisory Committee's Notes* (1985 Amendment).

In Seaplus Line, Judge Koeltl also referred to former Local Admiralty Rule 12, which provided in relevant part that "where property is arrested or attached, any person claiming an interest in the property arrested or attached, may upon a showing of any improper practice...on the part of the plaintiff to be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated...." Seaplus Line Co. v. Bulkhandling Handymax, 409 F.Supp.2d 316 (S.D.N.Y. 2005).

The penalty of vacature of the attachment for failing to give prompt notice should still be applied. Judge Koeltl explained in Seaplus Line that Congress, in deviating from former Local Admiralty Rule 12 to adopt Rule E(4)(f) made it ***easier*** to vacate an attachment: "[n]o showing of improper practice or a want of equity is required as under Former Local [Admiralty] Rule 12." The reason for this seemingly harsh result is clear: Rule B provides an extraordinary remedy that is far more easily obtained in an *ex parte* hearing based on a simple *prima facie* showing than its state-law equivalent. Further, Rule E(4)(f) provides a presumption that the attachment should be vacated, unless the plaintiff meets its burden of showing why the attachment should not be vacated.

Because Plaintiffs Chiquita and GWF failed to provide Holy House and/or Bosse with prompt notice of the restraints as required by Local Admiralty Rule B.2, they engaged in an improper practice concerning the restraints that failed to meet the technical requirements of attaching property under the maritime rules, and the attachments should therefore be vacated. In addition, because there is a 10-day automatic stay resulting from the vacature of an attachment to the actual release of funds pursuant to Rule 62(a),[6] the

---

[6] Status International S.A. v. M.N.D. Maritime Ltd., 1998 U.S. Dist. LEXIS 2825 (S.D.N.Y. Mar. 11, 1998) (holding that Rule 62(a) provides for an automatic stay of the execution of an order vacating a maritime attachment).

Court should ensure that Plaintiffs Chiquita and GWF is precluded from taking any steps to re-restrain the same funds before the relevant banks can release the same.

## CONCLUSION

As the vast majority of the funds restrained do not belong to the defendants or are property in which the defendants have an attachable interest and Plaintiffs have failed to give prompt notice of the initial two restraints to the defendants. The attachments should be vacated pursuant to Rule E(4)(f) for Plaintiff's failure to meet the technical requirements of the attachment procedure.

Dated: New York, New York
September 5, 2007

> FREEHILL HOGAN & MAHAR, LLP
> Attorneys for Defendants Holy House Shipping AB
> and Bosse Shipping Ltd.
>
> By: _____
> Michael E. Unger (MU 0045)
> Lawrence J. Kahn (LK 3215)
> 80 Pine Street
> New York, NY 10005
> (212) 425-1900 / (212) 425-1901 fax