UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHIQUITA INTERNATIONAL LIMITED and
GREAT WHITE FLEET LIMITED

                                    07 CIV 6786 (PKL)

                Plaintiff,

      - against -

MV BOSSE her engines, boilers, tackle, furniture,
apparel, etc., *in rem*; BOSSE SHIPPING LTD., AND
HOLY HOUSE SHIPPING AB *in personam*

                Defendants
------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO VACATE ATTACHMENT**

**PRELIMINARY STATEMENT**

Plaintiffs, Chiquita International Limited and Great White Fleet Limited (hereinafter "Chiquita") through undersigned counsel submit this Memorandum of Law in Opposition to defendants Holy House ("Holy House") and Bosse Shipping Ltd. ("Bosse") and a number of unnamed shipowners Motion to Vacate Attachment pursuant to Rules E(4)(f) and Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

Chiquita incorporates its Memorandum of Law, Declarations and Exhibits in support of its Motion to Dismiss the Complaint and Vacate the Attachment in the case entitled *Bosse Shipping Limtied v. Great White Fleet Limited* 2007 Civ. 7221 (RJS) which has been submitted to this Court in parallel with this motion.

In this matter, Chiquita attached wire transfers from New York banks that were directed to Holy House's bank accounts. In total six (6) wire transfers were attached.

Defendants request that the attachments be vacated for two reasons. First, the funds are not attachable assets because they do not belong to Holy House or Bosse. Secondly, they assert that the funds should be vacated because prompt notice was not given of the attachment.

In response, Chiquita submits that the attachments should not be vacated because all of the criteria for attachment of assets have been met and timely notice was given to the defendants and/or defendants counsel. Specifically, the evidence submitted with their Motion are self serving Declarations that create more questions then answers. Chiquita submits that the Court should not vacate the attachments on the evidence provided by defendants as it is insufficient and incorrect.

As an example, defendants argue that they did not receive prompt notice of the first two wire transfers. The declarations advising that notice was never received are incorrect. Notice was sent by e-mail to defendants on the first wire transfer and to defendant's counsel on the second attachment a day after receiving written confirmation from the banks. (Barnett declaration Exhibit 1, 2).

Lastly, the good thing about running two motions in parallel is that what is good for the goose is good for the gander. Chiquita requests that whatever time frame the Court holds as "prompt notice" the defendants also be held to with respect to their improper attachments of GWF funds. Similarly, Chiquita requests the ability to amend its Complaint based on the Court's determination as to an adequate amount of security for interest and recoverable fees and costs. Chiquita is willing however to stipulate to the release of funds for an acceptable Letter of Undertaking or bank guarantee for the appropriate amount of security from a P&I Club or Bank.

## STATEMENT OF FACTS

For the purpose of this Motion, GWF reasserts the facts as put forth in their Motion to Dismiss the Complaint and Vacate Attachment with the addition of the following:

## POINT ONE

## STANDARD OF REVIEW

For the purpose of this Motion, GWF reasserts the standard of review as put forth in their Motion to Dismiss the Complaint and Vacate Attachment.

## POINT TWO

## THE COURT SHOULD UPHOLD THE ATTACHMENT BECAUSE ALL OF THE CRITERIA HAVE BEEN MET TO ATTACH FUNDS

The Second Circuit Court of Appeals summarized maritime attachment under the Supplementary Rules in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2nd Cir. 2006):

> We therefore hold that, in addition to having to meet the filing and service requirements of Rule B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his Burden of showing that he has satisfied the requirements of Rules B and E.

*Id.* at 445.

The only issue the defendants have in this regard is that they claim that, except for one small portion of one EFT, neither Bosse nor Holy House has an attachable interest in the restrained EFTs. (Def's MOL p. 5).

The law is clear in this circuit that EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction. *Id.* at 437 (citing *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir.2002). It cannot be argued that the EFT's that were restrained were either directed to or from Holy House bank accounts and that the restraints were made on New York banks. The only argument that defendants make in this regards is that they assert that the funds, although directed to Holy House, are not really Holy House's moneys. They support this argument with a self-serving declaration stating that Holy House was merely an agent for various shipowners in collecting funds; however the declaration is void of any evidence supporting this fact.

The declaration by Mr. Blidberg is insufficient in many respects and causes more questions than answers. First, Mr. Blidberg provides that insofar as the contents of the declaration are within his knowledge they are true but otherwise are true to the best of his information and belief. Unfortunately, he does not go on to state what he knows and what he only believes to be true. While Mr. Blidberg states that Holy House has no interest in the attached funds, there is little support as no agency contract, management contract or the like is attached. Moreover, there is no mention that Holy House has a separate escrow account for this purpose or does not commingle funds. Obviously, if Holy House commingles

funds then it cannot be said that the funds passing through New York to Holy Houses account are anyones but Holy House funds. Further, with respect to notice, Mr. Blidberg is just plain incorrect in his Declaration as Holy House was provided prompt notice of the claims. (Blidberg Declaration ¶22).

Chiquita submits that the Declaration is insufficient to release these funds as the true nature of the relationships between Holy House and various shipowners are, at present, uncertain. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *In re Shulman Transport Enterprises* 744 F.2d 293,294, 12 Bankr.Ct.Dec. 779, Bankr.L.Rep.P 70,138 (2d Cir. 1984) quoting *Restatement (Second) of Agency* § 1(1) (1958). Absent the critical component of control, Holy House cannot be said to have acted as agent. The substance of the relationship should be reviewed to ascertain whether the money Holy House collected was held by it in the capacity of an agent. *Id.* at 295. The Blidberg Declaration makes statements concerning an agency relationship that are unsupported. Specifically, does Holy House have separate bank accounts or escrow accounts so that funds are not commingled? Where is the agency contract? Where is the authority by all of these separate shipowning companies to crew their vessel, provision their vessel, collect funds, make payments with respect to their vessels, charter their vessels etc… If we dig deeper will we find that the shipowning companies are one asset companies with no employees and are all owned by Holy House? Are they alter egos?

Why does the Declaration state "Neither Holy House nor Bosse Shipping has any interest in these funds when speaking about the second wire transfer but state that the hire was to be paid to Holy House which would then credit the funds to the shipowner as per the usual and customary practice." ? (Blidberg Declaration ¶¶ 13,15). Crediting funds to an account evidences a liability that is being paid which is substantially different than a fiduciary forwarding funds.

It is Chiquita's position that since the funds are being sent to Holy House they belong to Holy House. Otherwise, why would a shipowner in an arm's length transaction request that funds be transferred to their manager as opposed to the owner direct?

## POINT THREE

### THE ATTACHMENT SHOULD NOT BE VACATED BECAUSE PROMPT NOTICE WAS GIVEN TO DEFENDANTS

Defendants argue that Chiquita did not give prompt notice for the attachments that occurred on August 7 and August 17. As evidence they submit an Affirmation of Counsel and a Declaration of Mr. Blidberg stating basically that either no notice for the first two restraints was given or only vague information was given via telephone. (See Def's MOL pp. 8,9,10; Unger Affirmation ¶3-4; Blidberg Declaration ¶22).

The restraints were made against Holy House. On August 9, 2007 Notice was sent by e-mail to Holy House for the August 7, 2007 restraint. Attached to the e-mail sent to Holy House was a letter to Holy House advising of the details of the attachment; the letter from the bank dated August 8, 2007 advising of the attachment; the Complaint; the Court order for the initial conference on October 4, 2007; and Waiver of Service

forms for Bosse Shipping and Holy House. On August 23, 2007 an e-mail was sent to defendant's counsel advising him of the attachment by Deutsche Bank attachment of $77,699.29. Attached to the e-mail was the fax received from Deutsche Bank on August 22, 2007.

The Affirmation of Unger and the Declaration of Blidberg are wrong. Notice was provided to defendants and Notice was prompt.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the defendant's motion and hold that the attachments were proper.

Dated: September 12, 2007
New York, NY

                          Plaintiffs Chiquita International Limited and Great White Fleet, Ltd.

BY: _____
Gregory G. Barnett
CASEY & BARNETT, LLC
317 Madison Avenue, 21st Floor
New York, NY 10017
(212) 286-0225 (phone)
(212) 286-0261 (fax)
ggb@caseybarnett.com