384-07/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

CHIQUITA INTERNATIONAL LIMITED and
GREAT WHITE FLEET LIMITED,

Plaintiffs,

**07 CIV 6786 (PKL)**

-against-

M/V BOSSE, her engines, boilers, tackle, furniture, Apparel, etc., *in rem*, BOSSE SHIPPING LTD., and HOLY HOUSE SHIPPING AB, *in personam*,

Defendants.

----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION TO VACATE ATTACHMENT**

Freehill Hogan & Mahar, LLP
Attorneys for Defendants
Holy House Shipping AB and
Bosse Shipping Ltd.
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

Of Counsel:
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/290449.1

# TABLE OF CONTENTS


TABLE OF AUTHORITIES..........ii

PRELIMINARY STATEMENT..........1

ARGUMENT

POINT I..........1

THE BURDEN OF PROOF IS ON PLAINTIFFS TO DEMONSTRATE WHY THE ATTACHMENT SHOULD NOT BE VACATED; IN THE ABSENCE OF SUCH DEMONSTRATION, THE ATTACHMENT MUST BE VACATED

POINT II..........3

ALL OF THE NON-BOSSE / NON-HOLY HOUSE FUNDS SHOULD BE RELEASED

POINT III..........7

THE BOSSE FUNDS SHOULD BE RELEASED DUE TO THE FAILURE OF PLAINTIFFS TO COMPLY WITH THE NOTICE REQUIREMENTS

CONCLUSION..........12

# TABLE OF AUTHORITIES

## Cases

Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d 113 (E.D.N.Y. 1998) .......... 2

Blake Maritime, Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310 (S.D.N.Y. Oct. 31, 2005) .......... 8, 10

C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc., 419 F.Supp.2d 419 (S.D.N.Y. 2005) .......... 9

Chestnut Shipping Co. v. T-3 Freight, Ltd., 1995 U.S. Dist. LEXIS 2053 (S.D.N.Y. Feb. 22, 1995) .......... 10

Deiulemar Compagnia di Navigazione S.p.A. v. Dabkomar Bulk Carriers Ltd., 2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. Dec. 12, 2005) .......... 7

DS Bulk PTE, Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006) .......... 7

Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341 (M.D.FL. 2001) .......... 2

Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006) .......... 7

Rolls Royce Industrial Power (India) v. M/V FRATZIS M, 1996 A.M.C. 393 (S.D.N.Y. July 24, 1995) .......... 10

Salazar v. The Atlantic Sun, 881 F.2d 73 (3d Cir. 1989) .......... 2

Seaplus Line Co. v. Bulkhandling Handymax, 409 F.Supp.2d 316 (S.D.N.Y. 2005) .......... 10

Status International S.A. v. M.N.D. Maritime Ltd., 1998 U.S. Dist. LEXIS 2825 (S.D.N.Y. Mar. 11, 1998) .......... 11

T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310 (S.D.N.Y. 2006) .......... 2

Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318 (S.D.N.Y. 2006) .......... 2, 8

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is respectfully submitted, together with the accompanying Reply Declaration of Einar Blidberg and Reply Affirmation of Michael Unger, in further support of the application to vacate the attachment obtained by Plaintiffs Chiquita International Limited ("Chiquita") and Great White Fleet Limited ("GWF") (collectively "Chiquita/GWF"). The instant application is brought on behalf of innocent non-party shipowners whose funds have been restrained and, on different grounds, on behalf of Defendants Holy House Shipping AB ("Holy House") and Bosse Shipping Ltd. ("Bosse").

Since the submission of the moving papers, two additional wire transfers (EFT's) have been restrained. As attested to by Mr. Blidberg, neither of those transfers are funds in which either Defendant has any interest. Accordingly, it is respectfully submitted that these funds should also be released.

For the reasons set forth below and as set forth in the prior submissions, the motion to vacate the attachment should be granted.

## ARGUMENT

### Point I

### THE BURDEN OF PROOF IS ON PLAINTIFFS TO DEMONSTRATE WHY THE ATTACHMENT SHOULD NOT BE VACATED; IN THE ABSENCE OF SUCH DEMONSTRATION, THE ATTACHMENT MUST BE VACATED

An order of maritime attachment and garnishment under Rule B is issued upon a minimal *prima facie* showing, which is typically made *ex parte*. Once property has been restrained, though, "any person claiming an interest" in the attached *res* may request a

hearing in order to seek to have the attachment vacated or request other relief. T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310, 313 (S.D.N.Y. 2006). Rule E(4)(f), under which the applicants herein move for vacature of the attachment, provides clearly that the burden of proof rests with the Plaintiffs in demonstrating why the attachment should not be vacated. If the Plaintiffs fail to meet this burden, then the attachment should be vacated. Rule E(4)(f) provides as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which ***the plaintiff shall be required to show why the arrest or attachment should not be vacated*** or other relief granted consistent with these rules.

(Emphasis supplied.) A long line of consistent case law upholds the clear meaning of this rule, confirming that the burden of proof rests squarely with the plaintiff to demonstrate why the attachment should be maintained must result in vacature. Interpretations of Rule E(4)(f) are unanimous in holding that the burden of sustaining the attachment rests squarely with the plaintiff. *See, e.g.*, Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d 113, 125 (E.D.N.Y. 1998); Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318 (S.D.N.Y. 2006).

Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends upon the issues in controversy. Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3d Cir. 1989); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341, 1357-59 (M.D.FL. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions

appear to exist; rather Rule E requires plaintiff...to show why the attachment should not be vacated").

Here, Plaintiffs Chiquita/GWF have not met their burden of showing why the attachment should be maintained with respect to any of the attached funds, and accordingly the attachment should be vacated.

**Point II**

**ALL OF THE NON-BOSSE / NON-HOLY HOUSE FUNDS SHOULD BE RELEASED**

Most of the funds that have been restrained in this action are funds in which no defendant has any interest whatsoever. In the absence of any attachable interest in the funds whatsoever by either Bosse or Holy House, the funds must be released.

Defendant Holy House is a vessel manager that provides technical and commercial management for fifteen vessels, including but not limited to the M/V BOSSE, owned by Defendant Bosse. In its role as vessel manager, Holy House makes and receives payments with relation to the vessels under its management. Holy House has no interest of its own in the funds being received or being paid on behalf of the various shipowner clients. When, for example, charter hire is paid by a charterer to Holy House for and on behalf of the vessel's owner, the funds paid belong to the vessel owner *in toto*, and no part of these funds belong to Holy House. Also, for example, when an owner pays a local agent for its fees and services, the funds paid by Holy House to that agent on behalf of the vessel owner do not in any sense belong to Holy House.

All of the restrained funds were being sent to or from Holy House. With one exception, none of these funds have anything whatsoever to do with Bosse, and Holy

House has no interest in any of these funds (including the payment involving Bosse). A table of the restrained funds follows.

| Date (2007) | Originator | Beneficiary | Amount | Notes |
|---|---|---|---|---|
| Aug. 7 | Holy House | Golden Horn Shipping Transp. and Trading Ltd. | $9,989.00 | The sum of $4,348.00 was due for services rendered in connection with the M/V BOSSE. The remaining funds were for other vessels owned by other entities. Holy House has no interest in any of these funds, Bosse has an interest only in the sum of $4,348.00. |
| Aug. 17 | Lavinia Shipping | Holy House | $77,699.29 | The funds paid constituted charter hire due to Morillo Shipping Ltd. for charter of the M/V MORILLO, a vessel managed by Holy House. Neither Holy House nor Bosse have any interest in these funds. |
| Aug. 23 | Norton Lilly | Holy House | $131.84 | The funds paid represent the balance remaining which was due to Kea Shipping Ltd., owners of the M/V KEA, a vessel managed by Holy House, in connection with the repatriation of a crewmember from the vessel. Neither Holy House nor Bosse have any interest in these funds. |
| Aug. 29 | Sunline Shipping Ltd. | Holy House | $189,159.28 | The funds paid constituted charter hire due to Tasman Start Shipping Ltd. for charter of the M/V TASMAN START, a vessel managed by Holy House. Neither Holy House nor Bosse have |

| | | | | |
|---|---|---|---|---|
| | | | | any interest in these funds. |
| Aug. 31 | Seven Hills LLC | Holy House | $353,484.54 | The funds paid constituted charter hire due to Stina Shipping Ltd. for charter of the M/V STINA, a vessel managed by Holy House. Neither Holy House nor Bosse have any interest in these funds. |
| Sept. 4 | Humberto Alvarez Agency | Holy House | $3,710.56 | The funds paid represent the return of an outstanding balance from a disbursement account with a local agent which acted in respect to the call of the M/V BALTIC START, a vessel managed by Holy House for its owners, Baltic Start Shipping Ltd. |
| Sept. 13 | Seven Hills LLC | Holy House | $75,481.90 | The funds paid constituted a portion of the charter hire due to Stina Shipping Ltd. for charter of the M/V STINA, a vessel managed by Holy House. Neither Holy House nor Bosse have any interest in these funds. |

*See* Blidberg Declaration and Blidberg Reply Declaration. The two Blidberg Declarations establish that Holy House has no interest whatever in the restrained funds, and that Bosse has an interest in only part of one of the restrained EFT's. The wire transfer information and the other documents provided make it clear that there is no legitimate basis to restrain any of the payments in which Bosse and Holy House have no interest.

Importantly, Chiquita/GWF offer nothing to counter these facts. Instead, Chiquita/GWF question Blidberg's veracity,[1] without providing any evidence of their own as to why the Court should question the veracity of a statement made under penalty of perjury. Chiquita/GWF also seem to question whether Bosse truly has any interest in any of the subject restraints, but again do so based only upon the sheer surmise and conjecture of their counsel. Absolutely no evidence whatever is offered in support of the position taken by Chiquita/GWF that Bosse or Holy House have any interest in any of these funds (excluding for the moment the $4,348 in the first payment restrained).

Chiquita/GWF argue that the innocent shipowner clients must demonstrate some measure of "control" over the actions of Holy House in order for Holy House to be found to be their "agent", citing to one case which does no more than cite to the Restatement. Holy House, though, is a company incorporated in Sweden, and the U.S. law of agency is not relevant to whether Holy House is or is not an agent under the law of Sweden. Notwithstanding the foregoing, it is clear from Holy House's website and from the Blidberg Declarations that Holy House does not own any of the vessels it manages. Similar to a realty management company that acts on behalf of the landlord and who is unquestionably acting in the capacity of an agent when it spends money on upkeep for the building or in collecting rent and keeps track of these expenditures and receipts, Holy

---

[1] Chiquita/GWF claim that the Blidberg Declaration is "insufficient", but never explain why except to suggest that Holy House should have produced copies of its various contracts with its several shipowner clients. These documents are totally irrelevant to the question of whether the Defendants have any interest in the funds under restraint. Mr. Blidberg's sworn statement is backed up by the information publicly available on Holy House's website and by the documents relevant to the particular transactions at issue which have already been provided. Nothing more is needed to allow this Court to conclude that what Mr. Blidberg has said is true. The mere suggestion that the situation may be otherwise unsupported and unfounded and does not serve to carry the plaintiffs' burden under Rule E(4)(f).

House provides technical and commercial management, which includes the payment of local agency fees and the collection of charter hire due. There can be no good faith question – and Chiquita/GWF offer none – that the funds under restraint are all funds in which Holy House, as manager, has no interest. All the funds were being sent or received on behalf of Holy House's shipowner clients only.

The burden is upon Chiquita/GWF to establish why these funds should be restrained. In the total absence of any reason to restrain funds in which no defendant has any attachable interest, the funds should be immediately released. Accordingly, on this basis, the Court should release all of the attached funds, except for the $4,348.00 in which Bosse has an interest, which funds should be released on a separate basis, as discussed below.

**Point III**

**THE BOSSE FUNDS SHOULD BE RELEASED DUE TO THE FAILURE OF PLAINTIFFS TO COMPLY WITH THE NOTICE REQUIREMENTS**

It is well-established that one factor that the plaintiff must demonstrate is that all technical requirements of the attachment have been met. *Advisory Committee Notes to Rule E* (1985 Amendment) ("Rule E(4)(f) is designed to…[guarantee] a prompt post-seizure hearing at which [the defendant] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings"). *See also* DS Bulk PTE, Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006) (vacating attachment that failed to meet all technical requirements); Deiulemar Compagnia di Navigazione S.p.A. v. Dabkomar Bulk Carriers Ltd., 2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. Dec. 12, 2005) (same); Maersk, Inc. v. Neewra, Inc., 443

F.Supp.2d 519 (S.D.N.Y. 2006) ("[t]he plaintiff must demonstrate that...all technical requirements for effective attachment have been met"), *citing* Ulisses, *supra*, 415 F.Supp.2d at 322-23.

Notably, the Maersk Court also held that the Court has authority to vacate an attachment "upon a showing of 'any improper practice'", *citing* Blake Maritime, Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310 (S.D.N.Y. Oct. 31, 2005) (quoting Southern District of New York Former Local Civil Rule 12 (1986)). Here, Plaintiffs have failed to show that all technical requirements have been met – in particular, Plaintiffs' obligation to provide prompt notice of the restraint of the Defendant's property to the Defendant – and accordingly, the attachment should be vacated.

When a maritime plaintiff restrains property of the defendant through the *ex parte* Rule B procedure, due process concerns require that once property is restrained, the plaintiff must give the defendant prompt notice of the restraint so the defendant can take advantage of its right to a post-attachment hearing. This rule is codified at Local Admiralty Rule B.2, which provides:

> In an action where any property of a defendant is attached, the plaintiff shall give prompt notice ***to the defendant*** of the attachment. Such notice shall be in writing, and may be given by telex, telegram, cable, fax, or other ***verifiable*** electronic means.

(Emphasis supplied.) Here, Plaintiffs claim that notice was given, and point to an email which Plaintiffs' counsel says he sent to Holy House on August 9. Defendants have provided a sworn statement that no notice, including this email, was ever received. Blidberg Declaration ¶22 and Blidberg Reply Declaration ¶7. Under these circumstances, the law clearly favors the party asserting that no notice was ever received.

C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc., 419 F.Supp.2d 419, 427 (S.D.N.Y. 2005) (holding that a conclusory representation that the defendant was properly served will not overcome a defendant's sworn affidavit that she was not served).

Importantly, Chiquita/GWF here purportedly chose to provide notice by email only (even though Holy House's mailing address and fax number is readily available on its website). Providing notice by this means does not satisfy the requirement of the rule that any electronic notice that is given be ***verifiable***. L.A.R. B.2. Chiquita/GWF, though, has provided no proof that the email was ever sent to, or received by, Holy House. Plaintiffs have failed to demonstrate that any ***verifiable*** means was used to transmit the notice that was purportedly given of any of this restraint.[2] Plaintiffs, in keeping with their obligations under Local Admiralty Rule B.2, should have maintained some sort of verification – proof of receipt by the Defendant – such as (in the case of email) an email read receipt, in order to verify that the notice they were obligated to give was given. Plaintiffs appear not to have done so, though.

Local Admiralty Rule B.2 does not provide for any specific penalty for failing to provide prompt notice of a restraint. Certainly, though, for the Rule to have any effect, there must be some penalty for failing to comply. Former Local Admiralty Rule 12, on which the current Rule E(4)(f) is based,[3] provided that a district court had the inherent authority to vacate an attachment upon a showing of "any improper practice". *See* Blake

[2] We note also that the notice of the restraint of Bosse's funds – to the extent it was given at all (which is denied) was given only to Holy House, not to Bosse. Giving notice to one defendant of the restraint of a different defendant's funds does not meet the requirement of L.A.R. B.2 to give notice "to the defendant" of the restraint of its property.

[3] *See* Rule E *Advisory Committee's Notes* (1985 Amendment).

Maritime, *supra*, 2005 U.S. Dist. LEXIS 26310, *8 at n.3; *see also* Chestnut Shipping Co. v. T-3 Freight, Ltd., 1995 U.S. Dist. LEXIS 2053 (S.D.N.Y. Feb. 22, 1995).

Judge Haight, in Rolls Royce Industrial Power (India) v. M/V FRATZIS M, 1996 A.M.C. 393 (S.D.N.Y. July 24, 1995) looked to the origin of the Local Admiralty Rule B.2 prompt notice requirement and found that the wording was nearly identical to former Local Admiralty Rule 10, which provided:

> In an action where any property of a defendant is attached, the plaintiff shall give prompt notice to the defendant of the attachment. Such notice shall be in writing and may be given by telex, telegram or cable. ***Failure to give such notice may be regarded as an improper practice within the meaning of Rule 12***.

(Emphasis supplied.)

In Seaplus Line, Judge Koeltl also referred to former Local Admiralty Rule 12, which provided in relevant part that "where property is arrested or attached, any person claiming an interest in the property arrested or attached, may upon a showing of any improper practice…on the part of the plaintiff to be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated…." Seaplus Line Co. v. Bulkhandling Handymax, 409 F.Supp.2d 316 (S.D.N.Y. 2005).

The penalty of vacature of the attachment for failing to give prompt notice should still be applied. Judge Koeltl explained in Seaplus Line that Congress, in deviating from former Local Admiralty Rule 12 to adopt Rule E(4)(f) made it ***easier*** to vacate an attachment: "[n]o showing of improper practice or a want of equity is required as under Former Local [Admiralty] Rule 12." The reason for this seemingly harsh result is clear: Rule B provides an extraordinary remedy that is far more easily obtained in an *ex parte* hearing based on a simple *prima facie* showing than its state-law equivalent. Further,

Rule E(4)(f) provides a presumption that the attachment should be vacated, unless the plaintiff meets its burden of showing why the attachment should not be vacated.

Because Plaintiffs did not provide Bosse with prompt notice of the restraint of its funds as required by Local Admiralty Rule B.2, Plaintiffs engaged in an improper practice concerning the restraint that failed to meet the technical requirements of attaching property under the maritime rules, and the attachment should therefore be vacated. In addition, because there is a 10-day automatic stay resulting from the vacature of an attachment to the actual release of funds pursuant to Rule 62(a),[4] the Court should ensure that Plaintiffs are precluded from taking any steps to re-restrain the same funds before the relevant banks can release the same. Accordingly, the restraint of Bosse's funds should be vacated.

[4] Status International S.A. v. M.N.D. Maritime Ltd., 1998 U.S. Dist. LEXIS 2825 (S.D.N.Y. Mar. 11, 1998) (holding that Rule 62(a) provides for an automatic stay of the execution of an order vacating a maritime attachment).

## CONCLUSION

For all the foregoing reasons, the attachment should be vacated and Defendants should be granted such other, further and different relief as the Court may deem just and proper in the premises, including but not limited to an order that precludes Plaintiffs from re-restraining the same funds.

Dated: New York, New York
September 17, 2007

Respectfully submitted,
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendants
Holy House Shipping AB and
Bosse Shipping Limited

By: ______________________________

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax