USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10 11 07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHIQUITA INTERNATIONAL LIMITED
and GREAT WHITE FLEET LIMITED,

                    Plaintiffs,

          - against -

MV BOSSE her engines, boilers,
tackle, furniture, apparel,
etc., *in rem*; BOSSE SHIPPING
LIMITED, and HOLY HOUSE
SHIPPING AB *in personam*,

                    Defendants.

**OPINION AND ORDER**

07 Civ. 6786 (PKL)

BOSSE SHIPPING LIMITED,

                    Plaintiff,

          - against -

GREAT WHITE FLEET LIMITED,

                    Defendant.

07 Civ. 7221 (PKL)

### APPEARANCES

CASEY & BARNETT, LLC
317 Madison Avenue, 21st Floor
New York, New York 10017
Gregory George Barnett, Esq.

Attorneys for Chiquita International Limited and
Great White Fleet Limited

FREEHILL HOGAN & MAHAR, LLP
80 Pine Street
New York, New York 10005
Michael E. Unger, Esq.

Attorneys for MV Bosse, Bosse Shipping Limited, and
Holy House Shipping AB

**LEISURE**, **District Judge**:

Defendants MV Bosse, Bosse Shipping Ltd. ("Bosse"), and Holy House Shipping AB ("Holy House") move this Court pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure for an order vacating the process of maritime attachment and garnishment levied in favor of plaintiffs Chiquita International Limited ("Chiquita") and Great White Fleet Limited ("GWF") (collectively "Chiquita/GWF") pursuant to this Court's ex parte order dated July 30, 2007. In a related case, defendants GWF move this Court pursuant to Supplemental Admiralty Rule E(4)(f) for an order vacating the process of maritime attachment and garnishment levied in favor of plaintiff Bosse pursuant to an ex parte order issued by Chief Judge Kimba M. Wood in the Southern District of New York dated August 14, 2007. Alternatively, GWF seeks to have the amount of Bosse's security reduced pursuant to Supplemental Admiralty Rule E(6). For the following reasons, MV Bosse, Bosse, and Holy House's motion is denied and GWF's motion is granted.

**BACKGROUND**

## I.   Factual History

The underlying dispute in both of these admiralty actions arises out of the shipping of Chiquita bananas in

2

April and May of 2005 on the vessel MV Bosse. (Chiquita
Compl. ¶ 2.)  MV Bosse is owned by Bosse and managed by
Holy House. (Chiquita Compl. ¶¶ 5, 7.)  GWF, the
transportation arm of Chiquita, chartered the vessel from
Bosse to carry Chiquita bananas from Costa Rica to European
ports. (Chiquita Compl. ¶¶ 8, 10.)  GWF was to make
payments for the charter to Holy House. (Chiquita Compl. ¶
8.)

The vessel was arrested when it arrived in Tartous,
Syria on May 2, 2005, as a result of a customs fine from
2001 when the vessel was under a different name and
different ownership. (Chiquita Compl. ¶ 12; Bosse Compl. ¶
6.)  Bosse paid the $420,000 fine on May 4, 2005, and the
vessel was released by Syrian authorities on May 9, 2005.
(Bosse Compl. ¶¶ 6, 8.)  As a result of this one-week
delay, Chiquita asserts that the bananas were damaged and
could not be brought to the next port for sale. (Chiquita
Compl. ¶¶ 12-14.)  Chiquita sold the cargo in Tartous at a
reduced price. (Chiquita Compl. ¶ 14.)  Thus, Chiquita
seeks reimbursement for the resulting losses.

Bosse claims that GWF agreed to indemnify Bosse in the
charter party, but that GWF failed to provide a letter of
indemnity and failed to pay the 2001 fine. (Bosse Compl. ¶
7.)  The vessel's previous owner paid Bosse $300,000 in

settlement of an indemnity claim in connection with the 2001 fine. (Bosse Compl. ¶ 9.)  Bosse seeks from GWF the remaining balance of the fine, plus interest, totaling $153,600. (Bosse Compl. ¶ 10.)  Bosse also seeks $94,709.27 from GWF, which is the amount that GWF withheld from Bosse for fuel used during the delay in Tartous. (Bosse Compl. ¶ 11.)  Additionally, Bosse brings a claim against GWF for indemnification for any damages that Bosse might owe to Chiquita. (Bosse Compl. ¶¶ 12-15.)

### II.  Procedural History

On July 27, 2007, plaintiffs Chiquita and GWF filed suit (the "Chiquita action") against defendants MV Bosse, Bosse, and Holy House.  Plaintiffs sought an ex parte order directing the clerk to issue process of maritime attachment and garnishment against defendants pursuant to Supplemental Admiralty Rule B of the Federal Rules in Civil Procedure in an amount up to $800,610.03.  On July 30, 2007, the Court issued such an order.  On September 5, 2007, defendants moved for an order pursuant to Supplemental Admiralty Rule E(4)(f), vacating the process of attachment levied pursuant to the July 30, 2007 order.  Plaintiffs oppose this motion.

On August 14, 2007, Bosse, one of the defendants in the Chiquita action, demanded arbitration in London from GWF, one of the plaintiffs in the Chiquita action, and

filed an action in the Southern District of New York seeking security (the "Bosse action").  The Bosse action arises out of the same events as the Chiquita action. Chief Judge Kimba M. Wood signed an order on August 14, 2007 directing the clerk to issue process of maritime attachment and garnishment against GWF pursuant to Supplemental Admiralty Rule B in an amount up to $1,485,934.85.  In a letter dated August 27, 2007, the parties requested that the Court consolidate the actions and set forth a consolidated motion schedule.[1]  This Court granted the order on August 27, 2007.  In accordance with the Court's schedule, on September 5, 2007, GWF moved for an order pursuant to Supplemental Admiralty Rule E(4)(f) vacating the process of attachment levied pursuant to Chief Judge Wood's August 14, 2007 order, as well as to dismiss the complaint filed by Bosse.  Bosse opposes this motion.

The parties submitted memoranda of law and affidavits, and appeared before the Court on September 25, 2007 for a hearing pursuant to Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure (the "September 25

---

[1] Initially, this case was assigned to Judge Sullivan.  Chief Judge Wood granted the ex parte order while sitting as the Part I judge.  The Bosse action was formally transferred to this Court on September 13, 2007.

hearing").[2]  At the September 25 hearing, in response to
Holy House's request, the Court granted Holy House one week
to submit additional information, such as Holy House's
management contracts, in support of its motion in the
Chiquita action. (9/25 Tr. at 19:15-20:24.)  Plaintiffs
were given one week to respond to Holy House's submission.
(9/25 Tr. at 29:4-15.)  Holy House failed to submit any
additional information to the Court.

## DISCUSSION

When a defendant moves to vacate an attachment
pursuant to Supplemental Admiralty Rule E, the plaintiff
bears the burden of showing that the filing and service
requirements of Supplemental Admiralty Rules B and E were
met and that "1) it has a valid prima facie admiralty claim
against the defendant; 2) the defendant cannot be found
within the district; 3) the defendant's property may be
found within the district; and 4) there is no statutory or
maritime law bar to the attachment." Aqua Stoli Shipping
Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir.
2006) (footnote omitted).  If plaintiff fails to
demonstrate that it has met the requirements, the Court
must vacate the attachment.  Plaintiff, however, is not

---

[2] Citations to the transcript from this hearing are designated by "(9/25 Tr.)"

required to prove its case.  Rather, plaintiff must meet a prima facie standard. See Ronda Ship Mgmt. Inc. v. Doha Asian Games Org. Comm., No. 07 Civ. 94, 2007 WL 2812897, at *3 (S.D.N.Y. Sep. 20, 2007)("The majority of courts in this district have understood Aqua Stoli to require the application of the prima facie standard when considering the adequacy of a claim in a maritime vacatur motion.")

Once defendant's property has been restrained by a maritime attachment order, Rule E(4)(f) provides defendant an opportunity to appear before the Court to contest the attachment. See Fed. R. Civ. P. Supp. R. E(4)(f).  At a Rule E(4)(f) hearing, defendant "can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. R. E(4) advisory committee's note.

If plaintiff carries its burden to show that an attachment satisfies the requirements, the district court still may vacate the attachment if "1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." Aqua Stoli Shipping Ltd., 460 F.3d at 436.

I.    The Chiquita Action

Defendants MV Bosse, Bosse, and Holy House move to vacate the attachment of funds that were restrained by an ex parte order issued by the Court on July 30, 2007. Defendants do not challenge whether plaintiffs have a valid prima facie claim.  Rather, defendants make two arguments in support of their motion to vacate.  First, they argue that the majority of the restrained funds do not belong to Bosse or Holy House and therefore must be released. (Bosse Mot. at 4-7.)  Second, they argue that the attachments of funds on August 7 and 17, 2007 should be vacated for failure to provide prompt notice. (Bosse Mot. at 7-11.)

## A. Ownership of the Restrained Assets

"Under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." Aqua Stoli, 460 F.3d at 436 (citing Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002)).  Rule B only permits attachment of a named defendant's assets. See T&O Shipping Ltd. v. Source Link Co., Ltd., No. 06 Civ. 7724, 2006 WL 3513638, at *4 (S.D.N.Y. Dec. 5, 2006); see also DS Bulk Pte. Ltd. v. Calder Seacarrier Corp., No. 05 Civ. 10146, 2006 WL 1643110, at *2 (S.D.N .Y. June 13, 2006).

Defendants MV Bosse, Bosse, and Holy House assert that most of the restrained funds (all but $4,348) belong to other shipowners whose vessels are managed by Holy House and describes Holy House's role as an agent without "any personal interest in the transaction[s]." (Bosse Mot. at 6.) Holy House further states that it has been expressly authorized to make the application for vacatur on behalf of the shipowners whose property it asserts has been improperly restrained. (Bosse Mot. at 4-5.) Holy House submitted two declarations by Mr. Einar Blidberg, the Financial Controller of Holy House, which state that Holy House acts as manager and agent for its vessel-owning clients. (Blidberg Decl. ¶ 19; Blidberg Reply Decl. ¶¶ 3-5.) Additionally, Holy House notes that its company website describes the ownership of each of the ships whose funds it contends are being restrained. (Bosse Reply at 6 n.1.) Further, Holy House submitted to the Court a table of the restrained funds, describing the intended business purpose for the transfer of funds in each instance. (Bosse Reply at 4-5.) Holy House argues that Chiquita/GWF have not met their burden to show why the funds should be restrained.

Chiquita/GWF assert that because the funds were directed to or from a Holy House bank account, they are

attachable. (Chiquita Opp. at 3-6.)  Further, Chiquita/GWF

contend that Holy House has not provided sufficient

supporting documentation to prove the nature of the

relationships between Holy House and the other shipowners.

(Chiquita Opp. at 4-5.)  At the September 25 hearing,

counsel for Chiquita/GWF reiterated that Chiquita/GWF are

willing to take other forms of security. (9/25 Tr. at

18:19-22.)  Counsel for Chiquita/GWF further argued that if

the Court validates the rationale put forth by Holy House,

the Court inevitably will become bogged down with repeated

requests to vacate attachments based upon the elusive

concept of the intended purpose of the funds at issue.

(9/25 Tr. at 18:14-17.)  Such action would severely impede

plaintiffs' right to security for their claims, and would

be contrary to Second Circuit precedent. (9/25 Tr. at

18:18-19:9.)

    In support of their motion, Holy House relies, in

part, on T&O Shipping Ltd. and DS Bulk Pte. Ltd., in which

the courts held that plaintiffs may attach a defendant's

property, but not an unnamed party's property. See T&O

Shipping Ltd., 2006 WL 3513638, at *4; DS Bulk Pte. Ltd.,

2006 WL 1643110, at *2.  Notably, both T&O Shipping Ltd.

and DS Bulk Pte. Ltd. involved the restraint of funds held

in the name of a company that was not named in the

underlying complaint.  In this case, however, the funds are
in the name of defendant Holy House.  In addition, the
Second Circuit has held that "property" should be construed
broadly.  See Essar Int'l Ltd. v. Martrade Gulf Logistics,
FZCO, No. 07 Civ. 3439, 2007 WL 2456629, at *2 (S.D.N.Y.
Aug. 23, 2007)(citing Winter Storm Shipping, Ltd., 310 F.3d
at 275).  Further, "[u]nder Rule B, it is also possible for
more than one party to have an interest in the same
property." Id.

The Court finds that Chiquita/GWF have met their
burden under the Supplemental Admiralty Rules and Second
Circuit case law of proving a valid prima facie claim.
Further, Chiquita/GWF have demonstrated that Holy House has
an interest in the property sufficient to uphold the
attachment and that the funds were properly restrained.
Holy House's assertions regarding agency and ownership of
the attached funds are unpersuasive.  Regardless of Holy
House's management role with respect to the other non-party
shipowners with whom it does business, it is undisputed
that the funds were directed to or from defendant Holy
House's bank accounts. (Blidberg Decl. ¶¶ 11-16; Blidberg
Reply Decl. ¶¶ 3-5.)  Holy House's intended use of the
funds that were in its account is irrelevant here.
Therefore, the restraint of funds was proper under Second

Circuit precedent. See Aqua Stoli, 460 F.3d at 436; see also Ronda Ship Mgmt. Inc., 2007 WL 2812897, at *3.

### B. Notice of Restraints

Defendants MV Bosse, Bosse, and Holy House further claim that plaintiffs Chiquita/GWF are unable to show that they have met all technical requirements. (Bosse Mot. at 7-11.)  Specifically, defendants assert that plaintiffs did not give proper notice under Local Admiralty Rule B.2 of restraint of defendants' property. See S.D.N.Y. Local Admiralty Rule B.2 (stating that "[i]n an action where any property of a defendant is attached, the plaintiff shall give prompt notice to the defendant of the attachment. Such notice shall be in writing, and may be given by telex, telegram, cable, fax, or other verifiable electronic means").

First, defendants claim that plaintiffs did not give notice of restraints of the first two wire transfers, which occurred on August 7 and 17.  Second, defendants claim that to the extent plaintiffs attempted to give notice, such notice was not "prompt" and did not provide sufficient information.  The prompt notice rule does not provide for a specific penalty, however, defendants assert that under former Local Admiralty Rule 12, on which Local Admiralty Rule B.2 is based, vacatur of the attachment may be

12

appropriate, see Rolls Royce Industrial Power (India) v.
M/V Fratzis M et al., No. 95 Civ. 2630, 1995 WL 846690, at
*2 (S.D.N.Y. July 24, 1995)(quoting former Local Admiralty
Rules 10 and 12 regarding the procedure for a Rule E(4)(f)
hearing), and that therefore, vacatur would be appropriate
here.

     In response, Chiquita/GWF assert that prompt notice
was provided to defendants in the form of an e-mail, which
was sent to defendant Holy House following the first
restraint and to defense counsel following the second
restraint, one day after receiving written confirmation
from the banks. (Chiquita Opp. at 6-7.)  Specifically,
Chiquita/GWF claim that e-mails were sent on August 9 and
August 23, (Chiquita Opp. at 6-7), and included copies of
these e-mails in their submission to the Court. (Barnett
Chiquita Decl. at Exhs. 1-2.)  At the September 25 hearing,
plaintiffs' counsel stated that he received no e-mail
delivery failure notification and confirmed that he had a
proper e-mail address. (9/25 Tr. at 14:3-11.)

     Defendants, citing the Blidberg Declaration, state
that defendant Holy House never received the August 9 e-
mail and that notice was not sent by "verifiable" means, as
required under the Local Rule. (Bosse Reply at 8-9.;
Blidberg Reply Decl. ¶ 7.)  At the September 25 hearing,

defense counsel reiterated that other verifiable means of
communication were readily available to Chiquita/GWF,
including a facsimile number and mailing address posted on
the Holy House website. (9/25 Tr. at 12:24-13:24.)

The current Local Rule does not provide any specific
penalty for failure to provide prompt notice.  In Rolls
Royce Industrial Power (India) v. M/V Fratzis M, which
defendants cite in support of their argument regarding
Chiquita/GWF's failure to provide notice, Judge Haight
asked, "[i]n obtaining the attachment at issue, have the
plaintiffs engaged in improper practices to such a degree,
or do circumstances reveal a want of equity so manifest as
to require that the attachment be vacated in its entirety?"
Rolls Royce Industrial Power (India), 1995 WL 846690, at
*3.  In the instant case, the Court finds that such severe
action is not warranted.  Chiquita/GWF provided more than
just mere "conclusory statements," that notice was given.
C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc.,
419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005).  Specifically,
Chiquita/GWF submitted to the Court a copy of each of the
e-mails that were sent to Holy House and defense counsel.
(Barnett Chiquita Decl. at Exhs. 1-2.)  The rule clearly
provides for notification via electronic means, see
S.D.N.Y. Local Admiralty Rule B.2, which the Court reads to

include electronic mail notification. See, e.g., T&O
Shipping Ltd., 2006 WL 3513638, at *1 (discussing
notification of attachment via e-mail).  Further,
Chiquita/GWF explained steps that were taken to verify
receipt of the e-mail.  Additionally, Chiquita/GWF's
notification was "prompt" because notification was provided
just one day after Chiquita/GWF received confirmation from
the banks that attached the funds.

Plaintiffs Chiquita/GWF have met their required burden
and therefore, defendants' motion to vacate is denied.


II.   The Bosse Action

GWF moves to vacate the ex parte order of attachment
issued by Chief Judge Wood on August 14, 2007.  GWF asserts
that Bosse's complaint was made for the improper purpose of
retaliation against Chiquita/GWF for filing suit against
Bosse.

### A. Motion to Dismiss

In its submission to the Court, GWF moves to dismiss
Bosse's complaint pursuant to Supplemental Admiralty Rule
E(4)(f).  Bosse correctly noted in its submission to the
Court that Rule E(4)(f) allows a motion for vacatur of
attachment, but does not provide for dismissal. (Bosse Opp.
at 11-12.)  Rule 12 of the Federal Rules of Civil Procedure

is the proper vehicle by which a party moves to dismiss. See Fed. R. Civ. P. 12.  GWF, however, made no mention of Rule 12 in its submission to the Court.  Courts "will not consider such an argument lest Rule 12(b)(6) be completely subsumed by Supplemental Rule E(4)(f)."  Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 531 (S.D.N.Y. 2006).  At the September 25 hearing, the Court notified GWF's counsel of the deficiency and offered GWF the opportunity to submit a motion and supporting papers under Rule 12. (9/25 Tr. at 38:23-39:16.)  GWF informed the Court that it did not wish to pursue the motion to dismiss. (9/25 Tr. at 40:12-13.) Thus, the Court views GWF's procedurally deficient motion to dismiss as withdrawn and need not address it further here.

### B. Motion to Vacate

In its submissions to the Court and at the September 25 hearing, GWF addressed each of Bosse's claims in the Complaint.  Both GWF and Bosse submitted opinions from English Solicitors in support of their positions.  GWF submitted two affidavits from Mr. Adrian Charles Hardingham and Bosse submitted one declaration from Mr. Michael John Smith.  While GWF argues for vacatur, Bosse responds that the attachment must be maintained and the claims should be

16

decided before a London arbitral tribunal. (Bosse Opp. at
6.)

First, GWF addresses the deductions from the hire that
were taken by GWF for alleged off-hire and bunkers (fuel)
used when the vessel was delayed by the arrest. (GWF Mot.
at 11.)  In its complaint, Bosse claims that GWF improperly
took these deductions. (Bosse Compl. ¶ 11.)  In its motion,
GWF asserts that Clause 41 of the charter party
specifically grants GWF the right to take the vessel off-
hire during an arrest. (GWF Mot. at 11.)  Thus, GWF argues,
Bosse's claim for the deducted funds is unfounded.

Second, GWF argues that it is not responsible for
payment of the 2001 customs fine that led to the arrest of
the vessel. (GWF Mot. at 11-12.)  Bosse relies on Clause 77
of the charter party for its claim that GWF is obligated to
pay the 2001 customs fine. (Bosse Compl. ¶ 7.)  GWF
asserts, however, that because Clause 77 speaks only "in
respect of present or future Customs fines in respect of
this charter," it is not liable. (GWF Mot. at 10; GWF Reply
at 5.)  GWF, citing the Hardingham Affidavits, argues that
it is not obligated to pay for a past fine or for a fine
that does not relate to this charter, such as the 2001
fine. (Hardingham Aff. ¶¶ 7-8; Second Hardingham Aff. ¶¶ 7-
15.)  Bosse, citing the Smith Declaration, disputes GWF's

interpretation of "present and future," and claims that
"'present' means 'at the time when the charter party
contract was agreed' and that 'future' means thereafter
occurring." (Bosse Opp. at 5; Smith Decl. ¶¶ 5-6.)

    Third, GWF argues that it is not liable in indemnity.
Bosse claims that GWF must indemnify Bosse for any
liability to Chiquita in the Chiquita action. (Bosse Compl.
¶ 14.)  GWF asserts, however, that the indemnity claim is
without merit and is not ripe. (GWF Mot. at 12-13.)  GWF
also states that if GWF is held liable in indemnity,
Chiquita would be willing to waive any claim against Bosse.
(GWF Reply at 7.)  Bosse responds that under English law,
the claim is ripe. (Bosse Opp. at 7-11.)  Further, at the
September 25 hearing, counsel for Bosse stated that for
Chiquita's purported waiver offer to have "teeth" to it,
the Chiquita action should be stayed pending arbitration of
Bosse's claims. (9/25 Tr. at 30:22-31:10.)

    GWF moves, in the alternative, pursuant to
Supplemental Admiralty Rule E(6), for a reduction of the
security currently under attachment, asserting that Bosse's
claims "are either non-existent or grossly exaggerated."
(GWF Mot. at 14.)  In part, GWF asserts that the interest
calculated by Bosse should be reduced.  Additionally, GWF
states that the attachment should be reduced by the amount

18

of the Chiquita claim because Chiquita has agreed to waive
their claim against Bosse if GWF is found liable in
indemnity. (GWF Reply at 7.)  Bosse responds that GWF has
failed to make a good faith showing that a reduction is
warranted, Bosse has demonstrated that its claims are not
frivolous, and the Smith Declaration supports its estimated
interest and costs. (Bosse Opp. at 13-14; Smith Decl. ¶¶
24-26.)

GWF also requests permission to amend its Chiquita
complaint to include an adequate amount of security for
fees, costs and interest, as Bosse did in its complaint, if
the attachment is upheld. (9/25 Tr. at 26:23-27:7.)  Bosse
responds that GWF improperly included a motion to amend its
Chiquita complaint in its submissions to the Court in the
Bosse action.  Further, Bosse asserts that attorneys' fees
are not recoverable as to Chiquita because its action was
brought under American law and should be denied to GWF
because GWF has not commenced arbitration of its own.
(Bosse Opp. at 15-16.)

In their papers and at the September 25 hearing, the
parties debated the merits of the Bosse action in detail.
A detailed discussion of the merits, however, has little
bearing on the motion to vacate, which is decided based on
whether a prima facie claim is shown and technical

19

requirements for attachment have been met. See Aqua Stoli
Shipping Ltd., 460 F.3d at 445.  The Court need not, and
should not, reach the merits of the Bosse action as that is
properly left to the London arbitrators to decide. See
Finecom Shipping Ltd v. Multi Trade Enterprises AG, No. 05
Civ. 6695, 2005 WL 2838611, at *1-2 (S.D.N.Y. Oct. 24,
2005) (stating that courts should be particularly reluctant
to prejudge the merits of claims when the merits will be
decided by a foreign arbitration panel).

      As noted above, in order to survive a motion to
vacate, the plaintiff must make a prima facie showing and
demonstrate that all technical requirements for effective
attachment have been met. See Aqua Stoli Shipping Ltd., 460
F.3d at 445.  Additionally, the Second Circuit has held
that the two purposes of maritime attachments are "to
obtain jurisdiction of the respondent in personam through
his property [and] to assure satisfaction of any decree in
libelant's favor." Seawind Compania, S.A. v. Crescent Line,
Inc., 320 F.2d 580, 581-82 (2d Cir. 1963).  Courts also
have an "inherent authority to vacate an attachment upon a
showing of any improper practice or a manifest want of
equity on the part of plaintiff." Maersk, Inc., 443 F.
Supp. 2d at 528 (internal quotations omitted); Sea
Transport Contractors, Ltd. v. Industries Chemiques du

                            20

Senegal, 411 F. Supp. 2d 386, 391 (S.D.N.Y. 2006); see also

Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905

(2d Cir. 1965)("The inherent power to adapt an admiralty

rule to the equities of a particular situation is entrusted

to the sound discretion of the district judge.").

        Bosse makes three arguments in support of its ex parte

order.  First, at the September 25 hearing, Bosse's counsel

stated that the court clerk directed him to file the Bosse

action as a separate and unrelated action, and that Bosse

therefore believed that it was entitled to an ex parte

order. (9/25 Tr. at 3:20-23.)  Because Bosse was aware that

GWF was a party to the Chiquita action, which arose out of

the same facts and between the same parties, the clerk's

advice is irrelevant to the Court's consideration of the

instant motion to vacate.  Second, Bosse's counsel stated

that Bosse believed GWF was not a proper party to the

Chiquita action. (9/25 Tr. at 37:16-38:6.)  This

contention, however, also is irrelevant to the instant

motion.  Regardless of whether Bosse agreed with GWF's

inclusion as a party in Chiquita, Bosse still was fully

aware that GWF was a party before the Southern District of

New York in the related action.  Third, at the September 25

hearing, Bosse's counsel asserted that an ex parte order

was appropriate because if it pursued the alternative and

sought counter-security in the Chiquita action, Bosse
likely would have received a dollar-for-dollar equivalent
order of attachment to place it on equal footing with
Chiquita/GWF in the Chiquita action. (9/25 Tr. at 37:11-
15.)  Bosse's argument is unpersuasive.  If Bosse had
provided GWF with notice of its action, Bosse would have
had the opportunity to seek adequate security. See Fed. R.
Civ. P. Supp. R. E(7)(allowing defendants to seek counter-
security when the "counterclaim arises from the same
transaction or occurrence that is the subject of the
original action.").

     In Aqua Stoli Shipping Ltd., "[a]lthough the precise
boundaries of a district court's vacatur power" were not
before the court, the Second Circuit described
circumstances that would justify vacatur of an attachment.
Aqua Stoli Shipping Ltd., 460 F.3d at 444.  The Second
Circuit stated that vacatur would be appropriate if "1) the
defendant is subject to suit in a convenient adjacent
jurisdiction; 2) the plaintiff could obtain in personam
jurisdiction over the defendant in the district where the
plaintiff is located; or 3) the plaintiff has already
obtained sufficient security for the potential judgment, by
attachment or otherwise." Id. at 445.  Although the instant
case does not fall squarely within the Second Circuit's

22

guidelines, vacating the attachment in this case, given the
unique posture, is a logical -- and limited -- extension of
those guidelines.

        The first two guidelines set forth in Aqua Stoli
Shipping Ltd. suggest that vacatur is appropriate in this
case.  First, defendant GWF is subject to suit in this
jurisdiction in the Chiquita action.  The Southern District
of New York clearly is convenient to plaintiff because
plaintiff initiated the Bosse action here.  Second,
plaintiff Bosse could obtain personal jurisdiction over
defendant GWF in the Southern District of New York in the
Chiquita action.  In this case, Bosse did not go to another
district to attach defendant's assets; however, Bosse did
institute a separate action, which it failed to mark as
related, to attach GWF's assets.  The Court finds that such
circumstances fall within the Second Circuit's "narrowly
circumscribed" "concept of convenience." Id. at 444.

        In Rapture Shipping Ltd. v. Allround Fuel Trading B.V.
Chemoil, Judge Keenan stated that it was improper for the
plaintiff to obtain ex parte security when an earlier case
arising out of the same event, between the same parties,
and before the same court, was still pending, and
jurisdiction over the defendant in the prior action was not
an issue because the defendant had submitted to the

                                23

jurisdiction of the Court.[3]  See Rapture Shipping Ltd. v.

Allround Fuel Trading B.V. Chemoil, No. 06 Civ. 5296, 2006

WL 2474869, at *2 (S.D.N.Y. Aug. 28, 2006)(Keenan,

J.)(dismissing complaint and vacating attachment because

action was wholly duplicative of prior pending action).

Judge Keenan noted that "this is not the purpose of Rule

B." Id.  The instant case differs procedurally from Rapture

Shipping Ltd. because the Chiquita and Bosse actions are

not "wholly duplicative,"[4] and Bosse is the defendant in the

prior action, not the plaintiff.  Nonetheless, Bosse

obtained ex parte security that is inconsistent with the

purposes of Rule B.  As did the plaintiff in Rapture

Shipping Ltd., Bosse obtained ex parte security even though

an earlier case arising out of the same events, between the

---

[3] Judge Keenan declined to rule on whether the defendant's consent to
jurisdiction in the prior action was sufficient to satisfy Rule B's
"presence" requirement in the second action. Rapture Shipping Ltd.,
2006 WL 2474869; see also Winter Storm Shipping, Ltd., 310 F.3d at 268
("A Rule B attachment is available only if the defendant is not found
within the district.")(internal quotations omitted).  Similarly, in the
instant case, this Court need not determine whether GWF bringing suit
in the Chiquita action satisfies the "presence" test in the Bosse
action.

[4] In an opinion denying plaintiff's motion for reconsideration, Judge
Keenan stated that "the Court took no position on what requirements a
plaintiff must satisfy in non-duplicative actions where the defendant
has consented to jurisdiction, in order to defeat a motion to vacate an
order of attachment under Rule B." Rapture Shipping Ltd. v. Allround
Fuel Trading B.V. Chemoil, No. 06 Civ. 5296, 2006 WL 2850206, at *2
(S.D.N.Y. Oct. 4, 2006)(Keenan, J.).  However, the Court also stated
that "an attachment cannot be obtained 'except as an adjunct to
obtaining jurisdiction.'" Id.  Although Judge Keenan declined to
address whether the holding would apply to non-duplicative actions, the
Court finds that extension of the Rapture Shipping Ltd. holding in the
instant case is appropriate.  Although the Chiquita and Bosse actions
are not "wholly duplicative," they do arise out of the same facts,
between the same parties, before the same court.

same parties, and before the same court, is still pending.[5] In addition, Bosse would have no jurisdictional issues because GWF had already submitted to the jurisdiction of the Court by filing the Chiquita action.

Essentially, Bosse abused the attachment process and took advantage of the ex parte nature of a Rule B order, despite Bosse's knowledge that GWF already was before the Southern District of New York in the related Chiquita action arising out of the same facts and between the same parties. The purpose of a maritime attachment is to "secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory." Aqua Stoli Shipping Ltd., 460 F.3d at 435. GWF, however, was not an "absent party," and securing jurisdiction was unnecessary considering the pending Chiquita action. Given Bosse's knowledge of the pending Chiquita action, seeking an ex parte order of attachment in the Bosse action was an improper practice and showed a want of equity on the part of Bosse. See Maersk, Inc., 443 F. Supp. 2d at 528. Ultimately, Bosse's actions are not in accordance with the purposes of maritime attachments. Therefore, GWF's motion to vacate is granted.

---

[5] In fact, one of Bosse's own claims arises directly from the Chiquita action, seeking indemnity from GWF for any liability in the Chiquita action. (Bosse Compl. ¶ 13-16.)

25

## CONCLUSION

For the reasons set forth above, defendants MV Bosse, Bosse, and Holy House's motion to vacate in the <u>Chiquita</u> action is hereby DENIED, and defendant GWF's motion to vacate in the <u>Bosse</u> action is hereby GRANTED.  The Court hereby orders that the <u>ex parte</u> order of attachment issued by Chief Judge Wood on August 14, 2007 be vacated and directs the garnishees to release all restrained funds. The parties are ordered to appear before the Court for a pre-trial status conference on December 13, 2007 at 10:00 a.m.

**SO ORDERED.**

**New York, New York**

October **11**, 2007

_____

U.S.D.J.

Copies of this Order and Opinion have been sent by ECF to:

<u>Attorneys for the Plaintiff</u>
Gregory George Barnett, Esq.
CASEY & BARNETT, LLC
317 Madison Avenue, 21st Flr.
New York, NY 10017

<u>Attorney for the Defendant</u>
Michael E. Unger, Esq.
Lawrence Jay Kahn, Esq.
FREEHILL, HOGAN & MAHAR, LLP
80 Pine Street
New York, NY 10005

26